UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>PAULINO GONZALEZ,<br>Defendant. | Case No. 2:25-cr-00179-RFB-BNW<br>Las Vegas, Nevada<br>Thursday, June 26, 2025<br>11:12 a.m.<br>CHANGE OF PLEA<br>***C E R T I F I E D  C O P Y*** |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

THE HONORABLE RICHARD F. BOULWARE, II,
UNITED STATES DISTRICT JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | **JESSICA OLIVA, AUSA**<br>UNITED STATES ATTORNEY'S OFFICE<br>501 Las Vegas Boulevard South, Suite 1100<br>Las Vegas, Nevada 89101<br>(702) 388-6336 |
| For the Defendant: | **MICHAEL PARIENTE, ESQ.**<br>THE PARIENTE LAW FIRM, P.C.<br>3960 Howard Hughes Parkway, Suite 615<br>Las Vegas, Nevada 89169<br>(702) 966-5310 |
| Probation Officer: | Erin Oliver |
| COURT REPORTER: | Patricia L. Ganci, RMR, CRR<br>United States District Court<br>333 Las Vegas Boulevard South, Room 1334<br>Las Vegas, Nevada 89101 |

Proceedings reported by machine shorthand, transcript produced by computer-aided transcription.

LAS VEGAS, NEVADA; THURSDAY, JUNE 26, 2025; 11:12 A.M.

--oOo--

P R O C E E D I N G S

COURTROOM ADMINISTRATOR: The matter now before the Court is an arraignment in the United States of America versus Paulino Gonzalez, Case Number 2:25-cr-179-RFB-BNW. Counsel, please make your appearances, beginning with the Government.

MS. OLIVA: Good morning, Your Honor. Jessica Oliva for the United States.

THE COURT: Good morning.

MR. PARIENTE: Good morning, Your Honor. Michael Pariente for Mr. Gonzalez. He's present, out of custody.

THE COURT: Good morning.

(Whereupon proceedings were reported, but not transcribed.)

THE COURT: So this is the initial appearance as well, though, is it not, in this case?

MR. PARIENTE: Yes, Your Honor.

THE COURT: All right.

So, Mr. Gonzalez, you have been charged in an information in this case. You have the right to remain silent. Anything you say can and will be used against you. You have the right to an attorney. If you cannot afford an attorney, one can be provided at Government expense.

Do you understand these rights?

THE DEFENDANT: Yes.

THE COURT: All right.

Now, in this case, as I understand it, we're going to be proceeding with an arraignment and plea in this case. Is that correct, Mr. Pariente?

MR. PARIENTE: Yes, Your Honor.

THE COURT: Is that correct, Mr. Gonzalez?

THE DEFENDANT: Yes, sir.

THE COURT: All right. And, as I understand it, we're proceeding pursuant to an information in this case. Is that correct, counsel?

MR. PARIENTE: Yes, Your Honor.

THE COURT: Ms. Oliva?

MS. OLIVA: Yes, Your Honor.

THE COURT: So, Mr. Gonzalez, I need to ask you questions about your waiver of indictment and your competence to enter a plea today. And your answers to my questions have to be under oath. So if you could please raise your right hand.

PAULINO GONZALEZ, having duly been sworn, was examined and testified as follows:

COURTROOM ADMINISTRATOR: Thank you.

THE COURT: All right. So, Mr. Gonzalez, I need to just ask you some questions to make sure you're competent to enter your plea today. How old are you?

THE DEFENDANT: I'm 40 years old.

THE COURT: Okay. And how far did you go in school?

THE DEFENDANT: After high school I went through nurse's school. Then I did -- received a bachelor's doing pre-med and then proceeded to medical school, graduated from medical school, and I've done some postgraduate studies as well.

THE COURT: Okay.

THE DEFENDANT: Yes, sir.

THE COURT: And, Mr. Gonzalez, do you read, write, and understand the English language?

THE DEFENDANT: Yes, sir.

THE COURT: Do you suffer from any medical condition or other condition that makes it difficult for you to understand what's happening today?

THE DEFENDANT: No, sir.

THE COURT: Have you recently taken any medication or any other substance that makes it difficult for you to understand what's happening today?

THE DEFENDANT: No, sir.

THE COURT: Can you tell me in your own words, Mr. Gonzalez, what you understand to be the purpose of the hearing today.

THE DEFENDANT: Yes. I understand that I'm present here because I've agreed to -- to a plea agreement.

THE COURT: Okay.

THE DEFENDANT: Yes, sir.

THE COURT: All right. Thank you.

Does either counsel have any doubt as to Mr. Gonzalez's competence to waive indictment and enter a plea? Ms. Oliva?

MS. OLIVA: No, Your Honor.

THE COURT: Mr. Pariente?

MR. PARIENTE: None, Your Honor.

THE COURT: All right, Mr. Gonzalez. Based upon my observations of you, your answers to my questions, and the representations of counsel, I do find you're competent to enter your plea.

And, I'm sorry, did we get actually a court appearance from Pretrial Services? I don't know that we did.

OFFICER OLIVER: Your Honor, good morning. Erin Oliver, Pretrial Services.

THE COURT: Of course. Good morning, Ms. Oliver.

So, in this case, Mr. Gonzalez, you are proceeding by what's called an information. Do you understand that?

Okay. So if you don't understand, it's important. There's a difference between an information and an indictment. Do you understand the difference?

THE DEFENDANT: Yes. Yes.

THE COURT: Are you sure?

THE DEFENDANT: I --

THE COURT: If you don't understand, you can take a moment to ask your attorney because it's important for you to

understand this because you're waiving indictment. So if you want to take a moment, please do.

THE DEFENDANT: Yes, sir. My attorney's been very thorough and very informative, and I understand.

THE COURT: Okay. So what that means is that normally what the Government would have to do, Mr. Gonzalez, is they'd have to take evidence to the grand jury, and the grand jury would have to find there's probable cause to support charges against you before you could be charged. However, in this case you're agreeing that you'd just let them charge you by what's called an information, and you're waiving indictment. That means they don't have to take any evidence to the grand jury, and you're agreeing to let them charge you in this information.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that the grand jury doesn't have to indict you even if they hear evidence and the grand jury could decide based upon the evidence that there can be no charges against you? Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand by waiving indictment you're giving up your right to require the Government to take evidence to the grand jury in order for you to be charged?

THE DEFENDANT: Yes, sir.

THE COURT: All right. And are you doing so

voluntarily?

THE DEFENDANT: Yes, sir.

THE COURT: Did you have an opportunity to speak with your attorney before signing the waiver of indictment form?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have any questions about that form?

THE DEFENDANT: No, sir.

THE COURT: And did you sign this waiver of indictment form?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Pariente, did you sign this form as well?

MR. PARIENTE: I did, Your Honor.

THE COURT: All right.

And you understand in this case, Mr. Gonzalez, you are being charged with Conspiracy to Defraud the United States and Pay and Receive Healthcare Kickbacks? Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: All right. I do find that you've knowingly and voluntarily waived your right to indictment, and we shall proceed.

Now, as I understand it, Mr. Gonzalez, you also want to enter a plea today. Is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. And you're doing that pursuant to a

plea agreement with the Government. Is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: Now, in this case, as I indicated, you are charged with violating Title 18, United States Code, Section 371, which is Conspiracy to Defraud the United States and Pay and Receive Healthcare Kickbacks. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Okay.

Now, this offense has certain essential elements, and I'm going to ask Ms. Oliva to review those essential elements with you to make sure that you understand what they are.

Go ahead, please, Ms. Oliva.

MS. OLIVA: Yes, Your Honor.

The elements of Conspiracy to Defraud the United States and Pay and Receive Healthcare Kickbacks under Title 18, United States Code, Section 371 are as follows. So with respect to the first object, that is conspiracy to defraud the United States, there are three elements: first, there was an agreement between two or more persons to defraud the United States by obstructing the lawful functions of the Department of Health and Human Services and the Centers for Medicare and Medicaid Services, their administration and oversight of Medicare by deceitful or dishonest means as charged in the information in this case; second, that the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help

accomplish it; and, third, that one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

With respect to the second object, that is conspiracy to pay and receive healthcare kickbacks, there are three elements: first, that the defendant and at least one other person agreed to commit the crime of soliciting, receiving, offering, or paying money for ordering or arranging -- pardon me -- for ordering or arranging for or recommending the ordering of items or services for which payment may be made in whole or in part by Medicare; second, the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and, third, that at least one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the information in order to accomplish some object or purpose of the conspiracy.

THE COURT: Thank you, Ms. Oliva.

Mr. Pariente, do you agree that those are the essential elements of the charge in this case?

MR. PARIENTE: Yes, Your Honor.

THE COURT: And, Mr. Gonzalez, do you understand those to be the essential elements of the charge to which you're pleading guilty?

THE DEFENDANT: Yes, sir.

THE COURT: All right.

Now, do you understand, Mr. Gonzalez, that you're giving up your right to a jury trial by pleading guilty?

THE DEFENDANT: Yes, sir.

THE COURT: I'm sorry? You have to speak up.

THE DEFENDANT: Yes, sir.

THE COURT: Now, I'm going to review those trial rights with you. I want you to listen carefully to the rights I'm going to describe because these are the rights that you're giving up by pleading guilty today.

If you pled not guilty and continued in this case, you would be entitled to a public and speedy jury trial. At the trial you would be entitled to the representation of counsel. If you could not afford counsel, counsel would be provided at Government expense.

At the trial the Government would have to present witnesses and evidence against you, and your attorney would have the opportunity to be able to cross-examine those witnesses and challenge that evidence. Your attorney could present witnesses and evidence on your behalf. At the trial you could testify on your own behalf, but if you chose not to testify, the fact that you didn't testify could not be used against you.

At the trial you would be presumed innocent and could not be convicted unless the jury unanimously, that's each and every one of the jurors, found you guilty beyond a reasonable

doubt as to each and every element of the offense with which you are charged.

Do you understand that by pleading guilty today you're giving up the trial rights that I've just described?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that if you plead guilty what will happen is we'll proceed directly -- not today, but we'll proceed to sentencing and there will be no trial? Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Now, do you also understand there are certain maximum penalties that apply in this case? Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And in this case the maximum penalties are five years in prison, $250,000 fine or twice the gross gain or gross loss from the crime, a supervised release term of up to three years, and a mandatory special assessment of $100. Do you understand that those are the maximum penalties that apply here?

THE DEFENDANT: Yes, sir.

THE COURT: Now, as I sit here today, Mr. Gonzalez, I have no idea what sentence I'm going to impose, but I'm required by law to make sure you understand that if I thought it was appropriate I could impose a sentence up to the maximums. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you still wish to go forward with your plea today?

THE DEFENDANT: Yes, sir.

THE COURT: Now, Mr. Gonzalez, you understand that if at the time of sentencing you are unhappy with the sentence you receive, you couldn't at that time say to me, "I want to go to trial now because I don't like the sentence I received"? Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Right. If you wanted to withdraw your plea, you'd have to have a valid legal reason. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: You couldn't simply say to me, "Well, I'm unhappy with this. Now I want to go to trial." You understand?

THE DEFENDANT: Yes, sir.

THE COURT: Now, at the time of trial [sic] the Court will consider the federal sentencing guidelines and how they apply to your case. Okay? You understand that?

THE DEFENDANT: Yes, sir.

THE COURT: If you disagree with my calculation of the guidelines, right, again, you could not withdraw your guilty plea without a valid legal reason. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Now, in this case you're pleading guilty pursuant to a plea agreement. Is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: Have you had an opportunity to review the plea agreement?

THE DEFENDANT: Yes, sir.

THE COURT: Have you had enough time to go through it?

THE DEFENDANT: Yes, sir.

THE COURT: Do you need any additional time to go through it?

THE DEFENDANT: No, sir.

THE COURT: Is there anything in the plea agreement that you believe that you do not understand?

THE DEFENDANT: No.

THE COURT: Is there anything in the plea agreement where you would like to ask additional questions at this time?

THE DEFENDANT: No, sir.

THE COURT: I'm asking you that, Mr. Gonzalez, because once you enter the plea, you can't then go back and ask questions about it later. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: So if you need additional time, if you have additional questions, now is the time to raise it as a concern. Okay?

THE DEFENDANT: Yes, sir.

THE COURT: Do you want to go forward today?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. I just want to make sure you have had enough time to be able to review it with your attorney.

Now, what I am going to do is I'm going to ask Ms. Oliva to summarize the essential terms of the plea agreement. I want you to listen carefully to her summary because she'll be explaining what the Government believes are the key terms, not every term, but the key terms of the plea agreement. Okay?

THE DEFENDANT: Yes, sir.

THE COURT: Ms. Oliva, please.

MS. OLIVA: Thank you, Your Honor.

Your Honor, the parties have entered into a plea agreement through which Mr. Gonzalez knowingly and voluntarily agrees to plead guilty to a single-count criminal information. As noted on Pages 1 to 2 of the plea agreement, this agreement is not binding on the Court.

The information charges Mr. Gonzalez with Conspiracy to Defraud the United States and Pay and Receive Healthcare Kickbacks in violation of Title 18, United States Code, Section 371 and Title 42, United States Code, Section 1320a-7b, Subsections (b)(1) and (b)(2).

The elements of the offense are set forth on Pages 4 to 5 of the plea agreement. By pleading guilty, Mr. Gonzalez

admits under the penalty of perjury the factual basis set forth on Pages 8 through 11 of the plea agreement and that these facts satisfy every element of the charged offense.

Mr. Gonzalez agrees to pay restitution as set forth on Page 3, and he agrees to forfeiture as set forth on Pages 16 through 22.

As outlined on Pages 11 to 12 of the plea agreement, the parties stipulate to the base offense level of 8 and an enhancement of plus 22 for improper benefit conferred greater than $25 million, which results in an adjusted offense level of 30 that is before the application of a two-level reduction, if available, under Sentencing Guideline Section 4C1.1, and that is also before a reduction for acceptance of responsibility.

The parties reserve the right to argue whether an enhancement applies for abuse of trust under Sentencing Guideline Section 3B1.3. The parties further agree that if at the time of sentencing the District Court determines that Mr. Gonzalez has not received any criminal history points, the parties will jointly recommend that Mr. Gonzalez receive a two-level reduction under Sentencing Guideline Section 4C1.1(a).

The Government will recommend the two-level reduction for acceptance of responsibility so long as the conditions set forth on Page 12 are met, and if the District Court determines that Mr. Gonzalez's total offense level before acceptance of responsibility is 16 or higher, the USA will move for -- pardon

me -- the Government will move for an additional one-level downward adjustment for acceptance of responsibility, and that is again so long as the conditions on Page 12 are met.

The Government will argue for a sentence that is at the low end of the advisory guideline range as determined by the District Court. Mr. Gonzalez may argue for a downward variance pursuant to Title 18, United States Code, Section 3553(a).

If Mr. Gonzalez commits any act that results in the Court finding he is not entitled to a downward adjustment for acceptance of responsibility, the Government is entitled to argue for any sentence it deems appropriate under Title 18, United States Code, Section 3553(a). In any such event Mr. Gonzalez remains bound by the provisions of the plea agreement and shall not have the right to withdraw his plea agreement.

By pleading guilty, Mr. Gonzalez waives the constitutional rights listed on Pages 14 to 15 of the plea agreement, for example, the right to a trial, and Mr. Gonzalez also waives the right to appeal or -- pardon me -- the rights to appeal set forth on Pages 15 through 16.

Thank you, Your Honor.

THE COURT: Thank you.

Mr. Pariente, is that an accurate summary of the plea agreement in this case?

MR. PARIENTE: Yes, Your Honor.

THE COURT: And, Mr. Gonzalez, do you understand this to be an accurate summary of the plea agreement in this case?

THE DEFENDANT: Yes, sir.

THE COURT: Now, Mr. Gonzalez, I want to draw your attention to certain portions of the plea agreement specifically. Do you have it in front of you?

MR. PARIENTE: Yes, Your Honor.

THE DEFENDANT: Yes, sir.

THE COURT: So I want you to go to Page 8, Line 6. You see that section entitled "Factual Basis"?

THE DEFENDANT: Yes, sir.

THE COURT: Did you review that section before you signed this plea agreement?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that by signing the plea agreement you're admitting to all the facts in that section? Do you understand that?

THE DEFENDANT: Yes -- yes, sir.

THE COURT: Because that fact section goes from Page 8 and continues onto Page 11 at Line 6.

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that if I sign the plea agreement you're admitting to all of the facts in that section? You understand that?

THE DEFENDANT: Yes, sir.

THE COURT: So are you admitting to all of those facts?
MR. PARIENTE: Yes.
THE DEFENDANT: Yes, sir.
THE COURT: Are you admitting those facts voluntarily?
THE DEFENDANT: Yes, sir.
THE COURT: Do you understand the Court can use your admission to those facts for the purpose of both your conviction and sentence?
THE DEFENDANT: Yes, sir.
THE COURT: Ms. Oliva, does the Government request any further factual allocution with respect to the plea?
MS. OLIVA: No. Thank you, Your Honor.
THE COURT: All right.
Now, I want to draw your attention to another section of the plea agreement, Mr. Gonzalez, and that is Page 15, Line 13.
Do you see that section there entitled "Waiver of Appellate Rights"?
THE DEFENDANT: Yes, sir.
THE COURT: Do you understand that you've agreed to limit your rights to appeal to just those rights identified in that section?
THE DEFENDANT: Yes, sir.
THE COURT: Are you doing so voluntarily?
THE DEFENDANT: Yes, sir.

THE COURT: All right.

And, Ms. Oliva, is the plea agreement that I have in front of me the most favorable plea agreement that Mr. Gonzalez has received?

MS. OLIVA: It is the most favorable offer, Your Honor, yes.

THE COURT: Is that correct, Mr. Pariente?

MR. PARIENTE: Yes, it is, Your Honor.

THE COURT: Okay.

Now, do you also understand, Mr. Gonzalez, that this conviction can have immigration consequences? What that means is if you are not a natural-born citizen of the United States, this conviction could lead to you being deported and permanently barred from reentering the country. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Now, I don't want you to believe or understand that by my asking the question I'm somehow suggesting that you don't have legal status here. I am required by law to make sure that everyone understands the potential immigration consequences of this type of a conviction. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: Okay.

Do you understand that after any potential period of incarceration you would be required to serve a period of supervised release, and while on supervised release, there are

terms and conditions that you'd have to follow, and if you didn't follow the terms and conditions, you could be sent to prison without any credit for any previous time you served in prison? Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Is anyone forcing you in any way to enter your plea today?

THE DEFENDANT: No, sir.

THE COURT: Do you have any questions about your plea agreement or your plea that you'd like to have answered before you formally enter your plea?

THE DEFENDANT: No, sir.

THE COURT: Ms. Oliva, are there any additional questions the Government would like for me to ask Mr. Gonzalez before he enters his plea?

MS. OLIVA: No. Thank you, Your Honor.

THE COURT: All right, Mr. Gonzalez. With respect to Count One of the criminal information which charges you with conspiracy to violate Title 18, United States Code, Section 371, to defraud the United States and pay and receive healthcare kickbacks, how do you plead, guilty or not guilty?

THE DEFENDANT: I plead guilty.

THE COURT: Okay. It's the finding of the Court you're fully competent and capable of entering a guilty plea, that you're aware of the nature of the charges and the consequence of

your guilty plea, and your guilty plea is supported by an independent factual basis as to each and every element of the offense with which you are charged. I, therefore, adjudicate you guilty of this offense at this time.

I'm going to order a Presentence Investigation Report, and we will set a sentencing date in the future, not today.

(Court conferring with courtroom administrator.)

THE COURT: So, Mr. Gonzalez, what you should understand for the Presentence Investigation Report, you'll be interviewed by the probation department. Your attorney can be present during the interview. After that, they will produce a draft report for you to look at with your attorney to make any suggested corrections or edits to the report before it's finalized and used for sentencing, right.

At the sentencing you can make a statement on your own behalf. Your attorney can make a statement on your own behalf and submit material. You both can submit material for me to consider. You can have friends make statements on your behalf and submit material for me to consider.

Do you understand this sentencing procedure?

THE DEFENDANT: Yes, sir.

THE COURT: We might as well go ahead and set it. What date do you have that you were going to give me, Darci?

MR. PARIENTE: Your Honor, if -- if I may.

THE COURT: We're going to set a control date anyway,

so October 2nd, 2026, at 9:15 a.m.

Okay. And as far as release in this case, the Government is not opposing Mr. Gonzalez's continued -- continue to remain at liberty. Is that correct, Ms. Oliva?

MS. OLIVA: That's correct, Your Honor. We agree with Pretrial Services who recommends release on a personal recognizance bond with no conditions.

THE COURT: Okay. The Court will approve that.

So if there's nothing else, we will be adjourned on this case for now.

MS. OLIVA: If I may, Your Honor. I apologize.

THE COURT: Hold on just a moment. We will be adjourned for now. Now we'll go off the record.

Is there something else we need to do on the public record, Ms. Oliva?

MS. OLIVA: Just the preliminary order of forfeiture, Your Honor.

THE COURT: Ah. Well, we don't want Mr. Hollingsworth getting upset about that. There is a preliminary order of forfeiture that has been proposed. Is there any objection to the Court signing it at this time, Mr. Pariente?

MR. PARIENTE: No, Your Honor.

THE COURT: Okay. Now we'll be adjourned. Thank you.

(Whereupon the proceedings concluded at 11:38 a.m.)

--oOo--

COURT REPORTER'S CERTIFICATE

I, PATRICIA L. GANCI, Official Court Reporter, United States District Court, District of Nevada, Las Vegas, Nevada, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Date: January 26, 2025.

/s/ **Patricia L. Ganci**

Patricia L. Ganci, RMR, CRR