GREGORY A. BROWER, ESQ.
Nevada Bar No. 5232
gbrower@bhfs.com
ZACHARY R. MEYER, ESQ.
Nevada Bar No. 15783
zmeyer@bhfs.com
Brownstein Hyatt Farber Schreck, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Telephone: 702.382.2101
Facsimile: 702.382.8135

MIRANDA KANE *(pro hac vice)*
California Bar No. 150630
mkane@conmetkane.com
JORDAN DICKSON *(pro hac vice)*
California Bar No. 324406
jdickson@conmetkane.com
**CONRAD | METLITZKY | KANE LLP**
217 Leidesdorff Street
San Francisco, California 94111
Telephone: 415.343.7100
Facsimile: 415.343.7101

Attorneys for PAULINO GONZALEZ

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PAULINO GONZALEZ,<br><br>Defendant. | CASE NO. 2:25-cr-00179-RFB-BNW<br><br>**DECLARATION OF PAULINO GONZALEZ IN SUPPORT OF MOTION TO WITHDRAW GUILTY PLEA**<br><br>(Hearing Requested the Week of June 22, 2026) |

**DECLARATION OF PAULINO GONZALEZ**

I, Paulino Gonzalez, declare:

1. I am a resident of the State of Nevada and am over 18 years of age. I make this declaration in support of the Motion to Withdraw Guilty Plea in the above-captioned action. The following facts are known to me personally, and if called upon as a witness, I could testify to them competently.

2. I am currently forty-one years old and reside in Las Vegas, Nevada.

3. I grew up in Del Rio, Texas where I lived with my parents and two younger siblings until my parents divorced when I was approximately ten years old. I accelerated my high school coursework and graduated at 16 after which I attended nursing school at Southwest Texas Junior College. I became a Licensed Practical Nurse ("LPN") at 18, the first person in my family to obtain a degree.

4. I have long aspired to become a physician and to dedicate my life to helping others. In 2016, I graduated from the Universidad Autónoma de Guadalajara School of Medicine. I have sat for and passed two of the three licensing examination pre-requisites to apply for a residency. I was in the process of preparing for the final licensing examination when law enforcement contacted me regarding this matter. It is my understanding that a felony conviction may prevent me from obtaining my medical license.

5. Over the course of my twenty-year career as a health care professional, I have developed an expertise in wound care, in particular providing home health wound care. During the COVID-19 pandemic, I worked on the front lines of patient care, often working up to eighty hours per week to treat those in need. I have always prioritized building personal connections with my patients while implementing care plans to reduce pain and promote healing.

6. I stopped working with Sales Representative 1 in September 2024 and with Doctor 1 in February 2025, after which I continued providing home health wound care to patients in need through June 2025.

7. I received 1099's and paid taxes on the income I earned from my work with Sales Representative 1 and for Doctor 1.

8. My faith is central to my life and inspired me to give back to my community. Throughout my career, I have volunteered on medical mission trips to El Salvador, Haiti, and Guatemala to provide health care to under-served populations. In 2025, I started Wemu Foundation, a non-profit 501(c)(3)

organization dedicated to bringing public awareness to and improving the lives of immunocompromised individuals.

9. Since the public announcement of my guilty plea on June 30, 2025, I have been unable to secure gainful employment as a nurse. In February 2026, I agreed to voluntarily place my nursing license in inactive status.

10. When federal agents approached me in my home on January 16, 2025, I did not understand that I was a potential target of their investigation.

11. After speaking to a friend about the FBI interview, I retained counsel. My prior counsel required a flat-fee arrangement that limited the scope of their representation through plea negotiations only.

12. On January 27, 2025, my prior counsel and I sat for a proffer with the government. At this time, I still believed that I was merely assisting the government's investigation.

13. Throughout January and February 2025, with the assistance of my prior counsel, I gathered and produced communications and records in response to a grand jury subpoena issued by the government on January 27, 2025.

14. From the time agents approached me through April 2025, I did not understand or believe that I was the subject or target of a government investigation, and my prior counsel never advised me otherwise. Prior to April 2025, I did not understand, nor was I advised by my prior counsel, that the government expected me to plead guilty to a crime as part of my cooperation.

15. When my prior counsel and I met sometime during the week of April 16, 2025, they told me for the first time that the government expected me to plead guilty. My prior counsel advised that it would be in my interest to accept the plea offer and continue cooperating in order to earn a sentencing reduction.

16. During our April 16, 2025 meeting, and on many occasions subsequent to the meeting, I expressed discomfort with proceeding with the plea offer and explained to my counsel that I did not believe the government could prove that I agreed to join a conspiracy or that I possessed any intent to further unlawful objectives.

17. On approximately April 19, 2025, I consulted ChatGPT to better understand what the government had to prove about my criminal intent. My ChatGPT research, which I shared with my prior counsel via text, appeared to confirm my concerns about the weaknesses in the government's case against me. My prior counsel told me ChatGPT's information was incorrect.

18. On May 1, 2025, my prior counsel and I participated in a virtual proffer with the government. In the weeks following, I repeatedly told my prior counsel that I did not believe the government could prove that I had knowingly entered into a conspiratorial agreement with Sales Representative 1 and Doctor 1or that I intended to further any unlawful objectives they might have.

19. On May 15, 2025, the government presented certain evidence to me and prior counsel during a virtual meeting that was described to me as a reverse proffer. The government shared its screen to show us: checks and bank statements allegedly reflecting payments I received from Doctor 1 and Sales Representative 1; messages between Doctor 1 and Sales Representative 1; selected patient files, including treatment notes and allograft sizes; and information regarding rebates managed by Doctor 1. After that meeting, I spoke with my prior counsel by phone. I do not know if my counsel requested or received copies of the evidence that the government presented at the reverse proffer. We did not meaningfully review the limited evidence presented during the reverse proffer on this call.

20. During that conversation, my prior counsel advised that Sales Representative 1 and Doctor 1 were likely to receive lengthy prison sentences, potentially up to twenty years, and that if I did not plead guilty and cooperate, I would be "grouped in" with Sales Representative 1 and Doctor 1. I understood this to mean that I would receive the same sentence as Sales Representative 1 and Doctor 1 – 20 years – if I proceeded to trial.

21. During the same phone call on May 15, 2025, my prior counsel also compared my conduct to that of a taxi driver who drives someone to a bank when that person intends to commit a robbery, and stated that the driver would be responsible for the robbery.

22. On June 12, 2025, my prior counsel provided me with the finalized plea agreement and advised that I had to make a decision about whether to accept it by June 18, 2025 or it would expire. I was unaware that the Department of Justice had planned a press announcement regarding a national health care fraud takedown and that my case would be showcased as part of that effort.

23. On June 16, 2025, I met with my prior counsel for approximately one hour. A fraction of the meeting was spent reviewing the plea offer and explaining what the government would have been required to prove if I chose to proceed to trial.

24. During that June 16, 2025 meeting, my prior counsel told me that the fact that the government could show money from Sales Representative 1 going into my bank account was enough to establish my criminal intent. Had I understood that the government would have been required to prove that I possessed the requisite criminal intent—and not merely that I received money into my bank account—I would not have agreed to plead guilty. Instead, I signed the Plea Agreement during our meeting.

25. Based on my prior counsel's (incorrect advice), I believed the government could satisfy key elements of the charged conspiracy simply by showing that I received money from Sales Representative 1 or Doctor 1, regardless of any evidence of my knowledge or intent.

26. On June 20, 2025, I met with my prior counsel for what I believed would likely be our final discussion before the change of plea hearing. Because I continued to question the propriety of pleading guilty given the lack of evidence regarding my knowledge or intent to engage in a criminal conspiracy, I secretly recorded the meeting so I could review my prior counsel's advice and explanation of what the government would have needed to prove. At the time I made the recording, I intended to use it solely as a reference that I could replay to assist in my understanding. I did not yet have concerns that my prior counsel was providing me with bad advice.

27. Based on my prior counsel's advice, I reluctantly agreed to go forward with the change of plea on June 26, 2025.

28. I understood that waiving my right to prosecution by indictment and agreeing to proceed by Information was a condition of the government's plea offer.

29. Even after pleading guilty, I was still bothered by my prior counsel's explanation of the government's intent burden. When I told a friend that my attorney had said the government needed only to prove that money entered my bank account, my friend also questioned whether that was accurate. My friend's reaction corroborated my own concerns, and I immediately sought new counsel.

30. Following a fulsome reverse proffer with my current counsel and the new prosecution team on February 4. 2026, I concluded that my earlier concerns about the weaknesses in the government's case were well-founded. I directed undersigned counsel to move forward with the instant motion to withdraw my guilty plea.

31. I believe that had my prior counsel requested and reviewed discovery with me, I would not have entered a guilty plea.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct. Executed on April 29, 2026 in Las Vegas, Nevada.

*/s/Paulino Gonzalez*
PAULINO GONZALEZ